Walter OTTO, a taxpayer of the City of Dayton, Ohio, Plaintiff-Appellant,

v.

Hon. Frank R. SOMERS, Mayor of the City of Dayton, et al., Defendants-Appellees.

No. 15565.

United States Court of Appeals
Sixth Circuit.

June 5, 1964.

698

Walter Otto, in pro. per.

W. Erwin Kilpatrick, Asst. City Atty., Dayton, Ohio, Herbert S. Beane, City Atty., Dayton, Ohio, on brief, for appellees.

Before MILLER and EDWARDS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

PER CURIAM.

Plaintiff-appellant brought a class action, as a taxpayer of the City of Dayton, Ohio, against the Mayor, the City Commissioners, and the Director of Finance of that city, for deprivation of his civil rights and for the deprivation of the civil rights of all other taxpayers of Dayton. He alleged that jurisdiction of the action was founded on Article 3, Section 2, of the Constitution of the United States; on the Fourteenth Amendment to the Constitution of the United States; on Title 28 U.S.C.A. § 1348; and on Title 42 U.S.C.A. §§ 1983 and 1988. He claimed a judgment against the defendants in the amount of $4,000; "reasonable compensation to plaintiff therefrom, for expenses and services herein; and the special amount of $0.03 therefrom for damage to plaintiff; and injunction to enjoin defendants from threatened payment in the amount of $2,000; and costs."

The District Court dismissed appellant's complaint for want of jurisdiction.

It appears that the facts giving rise to plaintiff's claim are as follows: The Mayor and city officials of Dayton desired to conduct a secret investigation with regard to suspected corruption involving the police force of the municipality. In carrying out their investigation, they employed private detectives; they approved and ratified payment for such services in the amount of $4,000; and they will ratify the payment of a further sum of $2,000 for the services rendered by the private detective firm. Plaintiff claims that the Mayor and city officials acted in concert under color of state law, adopting resolutions to carry out their purposes and ratifying such

necessary expenditures; that no record of any public proceeding appears upon the minutes and journal of the Commission of the City of Dayton in the office of the Clerk of the Commission, showing that the Commission had, prior to its resolution "recorded its contemplation of the purpose and necessity of said services, and the probable cost thereof," and that, in sum, the resolution ratifying the payment of the expenditures was legally void and the payment unauthorized because it did not comply with certain charter provisions, namely, that the resolution was not signed by the Mayor or two Commissioners; that it contained more than one subject, which was not clearly stated in the title; that certain expenditures were made before adoption of the resolution became effective; that the resolution was not published at least once within ten days after its final passage; that a written contract for the services involved was not prepared as required by the city charter; and that the services of the private detectives investigating the Police Department were provided without direction and control of the City's Chief of Police. Numerous other similar violations of the charter provisions are set forth in the Complaint, and are not necessary to be here recounted.

The chief provision of the United States Constitution relied upon by appellant is Amendment XIV, Section 1, which provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The principal statutes upon which appellant relies are Title 28 U.S.C.A. § 1343, and Title 42 U.S.C.A. §§ 1983, 1985, and 1988.

Title 28 U.S.C.A. § 1343, insofar as herein applicable, provides that the district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in Section 1985 of Title 42; to redress the deprivation under color of State law, statute, ordinance, regulation, custom or usage, of any right secured by the Constitution of the United States, or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and to recover damages or secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

Title 42 U.S.C.A. § 1983, provides, insofar as herein applicable, that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Title 42 U.S.C.A. § 1985, insofar as herein applicable, provides that if two or more persons in any State conspire to deprive another of the equal protection of the laws, the party so injured or deprived, may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

■ Title 42 U.S.C.A. § 1988, is not relevant to the issues raised in the present case.

■ Section 1 of the Fourteenth Amendment has no application to this case. There is no law, statute or ordinance, here involved, which abridges the privileges or immunities of citizens of

the United States, nor have any of the ordinances of the City of Dayton, upon which appellant relies, deprived any person of life, liberty, or property without due process of law, nor have they denied to any person within its jurisdiction, the equal protection of the laws. Certainly, appellant has not been denied the *equal* protection of the laws as he is in the same situation as all other citizens and taxpayers of the municipality involved. "The prohibition of the Equal Protection Clause goes no further than the invidious discrimination." Williamson v. Lee Optical Co., 348 U.S. 484, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563. "The equal protection clause of the Fourteenth Amendment is not violated unless there is shown the element of intentional or purposeful discrimination." Hughes v. Heinze, 268 F.2d 864, 870 (C.C.A.9).

■ Title 42 U.S.C.A. § 1983, is relied upon, in this case, to grant redress, for that which is condemned and forbidden by Section 1 of the Fourteenth Amendment to the Constitution of the United States, Downie v. Powers, 193 F.2d 760 (C.C.A.10) ; and appellant contends that the statute finds its justification in the above-named amendment; but, as above stated, appellant has not suffered any abridgment of his privileges as a citizen of the United States; nor has he been deprived of any right of property without due process of law; nor has he been denied the equal protection of the laws. The foregoing determination makes it unnecessary to discuss Article III, Section 2, of the Constitution, relied upon by appellant, as that Section is not relevant to any of the issues in the present controversy.

Appellant has cited and quoted from Crampton v. Zabriskie, 101 U.S. 601, 609, 25 L.Ed. 1070. The court in the Crampton case stated:

"Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county or the illegal creation of a debt which 'hey in common with

other property-holders of the county may otherwise be compelled to pay, there is at this day no serious question. The right has been recognized by the State courts in numerous cases; and from the nature of the powers exercised by municipal corporations, the great danger of their abuse and the necessity of prompt action to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere upon the application of the taxpayers of a county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property-holders. Certainly, in the absence of legislation restricting the right to interfere in such cases to public officers of the State or county, there would seem to be no substantial reason why a bill by or on behalf of individual tax-payers should not be entertained to prevent the misuse of corporate powers."

Crampton v. Zabriskie, supra, did not disclose the ground upon which the Supreme Court and the Circuit Court of the United States for the District of New Jersey assumed jurisdiction. No mention is made of the jurisdictional amount or of diversity of citizenship, and the case in the Circuit Court is not reported. Since the Supreme Court affirmed the decree of the Circuit Court, the above-quoted statement in the Crampton case might, without more, indicate that *federal* courts had jurisdiction of suits in which resident taxpayers of a county invoked the interposition of equity to prevent unlawful payment of funds by a county board.

However, in Skirving v. National Life Ins. Co., 59 F. 742, 745 (C.C.A.8), the court, in commenting upon Crampton v. Zabriskie, supra, said:

"It does not appear from the complaint and record in the law case that the citizenship of the assignors of these orders was such as would have enabled them to maintain a

suit thereon in the circuit court, and it is urged that for this reason the court rendering the judgment was without jurisdiction, and the judgment void. There are two answers to this contention: The bill does not challenge the jurisdiction of the court rendering the judgment; but if it did, it is well settled that the judgments and decrees of the United States courts rendered upon personal service on the defendant are binding until reversed, though no jurisdiction be shown on the record. If the record fails to show the facts on which the jurisdiction rests,—as, for instance, that the plaintiff and the defendants are citizens of different states; or, where the plaintiff sues as assignees, that his assignor might have maintained the suit,—the judgment may be reversed for error upon a direct proceeding for that purpose, but it is not void, and cannot be attacked collaterally."

Twenty-five years after Skirving v. National Life Ins. Co., the United States District Court in North Dakota, in Scott v. Frazier, 258 F. 669, 673, in commenting upon Crampton v. Zabriskie declared that jurisdiction of that action "was based upon diversity of citizenship and the complaint showed the requisite jurisdictional averment." Although it is not disclosed in Scott v. Frazier, supra, where the information as to diversity of citizenship in Crampton v. Zabriskie was obtained, nevertheless it now appears, as the result of our research, that the original record in Crampton v. Zabriskie, supra, presently on file in the Supreme Court, shows that Crampton was a resident of the State of New York, while Zabriskie and the other defendants were residents of the State of New Jersey. Jurisdiction in the Crampton case was accordingly based upon diversity of citizenship.

Crampton v. Zabriskie, therefore, is not authority for the proposition that a taxpayer who is a resident of a given state may bring an action in the federal court against municipal officers who are residents of the same state to prevent illegal disposition of monies of the municipality.

 It appears that appellant has misconceived the nature of his remedy as a taxpayer, if he has such a remedy. What appellant claims is that the municipal authorities have wrongfully expended or misapplied funds of the municipality. If such funds have been so wrongfully expended or misapplied—a species of conduct of which we are entirely without knowledge—then a cause of action may exist in favor of the municipal corporation. In such a case, if the municipality or the municipal authorities refuse to act in bringing such an action, after a proper request, a taxpayer might bring suit for the benefit of the municipality—if there is a right in the municipal corporation to prosecute such an action. But the recovery of funds in such an instance is for the benefit of the municipality. An action in the case above outlined would be a taxpayer's suit for the benefit of the municipality. There is no jurisdiction under the federal constitution or the federal statutes to entertain appellant's suit herein, even if it were to be considered a taxpayer's suit for the benefit of the municipality. We have already held that the case does not involve any deprivation of appellant's civil rights under Section 1 of the Fourteenth Amendment.

Other contentions raised in the briefs and arguments are unnecessary to decision.

Questions arising under the Fourteenth Amendment are of such magnitude that often the mere suggestion that an appeal raises issues thereunder, causes immense research and profound consideration of the controversy. In the present case, the appellant, who is not a member of the legal profession, has already brought several suits involving the same or similar issues here before us, all of which have terminated adversely to his contentions. Without criticizing the right of any citizen to act as his

own lawyer in a case in which he believes he is being deprived of his constitutional rights, it may be observed, as was remarked in Davis v. Foreman, 251 F.2d 421, 422 (C.A.7): "We have here a classic example of what occurs when laymen attempt to institute a lawsuit without the benefit of legal counsel. With but rare exception the end result is needless harassment of the defendants, fruitless endeavor by the plaintiffs and an unnecessary burden upon the courts."

In accordance with the foregoing, the order of the District Court dismissing appellant's complaint is affirmed.